IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JACKIE D. ZEAGLER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

No. C 07-03809 CRB

**MEMORANDUM AND ORDER**

### I. BACKGROUND

Plaintiff Jackie Zeagler ("Zeagler") appeals the denial of her application for social security benefits.

**A.    Procedural History**

Zeagler filed an application for supplemental security income under Title XVI of the Social Security Act on April 27, 2004. Zeagler's application was initially denied on January 6, 2005 and upon reconsideration on July 22, 2005. Thereafter, she filed a timely request for a hearing before an administrative law judge ("ALJ"). This hearing was held on October 17, 2006, at which Zeagler testified and was represented by counsel.

On November 30, 2006, the ALJ denied Zeagler's claim, finding her "not disabled" within the meaning of the Social Security Act. This decision became final when the Social Security Administration Appeals Council denied Zeagler's request for review on May 25,

2007. Zeagler now seeks judicial review in this Court under 42 U.S.C. § 405(g).

**B.      Factual Background**

      **1.      Plaintiff's Disability Claim**

Zeagler alleges disability since June 23, 2003 on the basis of a host of impairments. These impairments include: adjustment response to history of throat cancer and polysubstance abuse in reported remission, depression, and right foot and ankle pain. Zeagler alleges that she is unable to work because of these impairments.

      **2.      Plaintiff's Administrative Hearing Testimony**

Zeagler became disabled on June 23, 2003 after discovering that she had throat cancer. Transcript ("Tr.") 262. Her medical records indicate that she has a history of adjustment disorder or adjustment response to medical issues, a history of throat cancer, a history of polysubstance abuse, a history of squamous cell carcinoma on her right vocal cord, and foot and ankle pain. Tr. 276. She had pain on the whole left side of her body, and she must lie down an average of six hours per eight hours of daylight. Tr. 280. She can only concentrate for an average of one hour at a time. Tr. 279.

Zeagler ended her employment as a housekeeper in 2004. Tr. 283. She currently lives with her son and admits to having taken care of her two grandchildren for up to two hours at a time in 2004. Tr. 275. Finally, despite her impairments, she can still perform household chores and also drives a car with a manual transmission two to three times per week. Tr. 267-71.

**C.      Medical Evidence**

      **1.      Treating Physicians**

            **a.      Physical Impairments**

In February 2004, Zeagler was first seen at the University Medical Center after complaints of hoarseness, neck pain, symptoms of depression, and weight loss. Tr. 237. She was referred to an Ear, Nose, and Throat Specialist. Id. An exam of her throat showed nodules on the right vocal cord, and she was subsequently diagnosed with throat cancer in

April 2004. Tr. 236. After radiation treatments, clinical exams in October and November 2004 showed no further evidence of disease. Tr. 190, 192.

In February 2005, Zeagler saw Dr. Laramie for complaints of joint pains and swelling. Tr. 205. She was given a brace for bilateral carpal tunnel syndrome and blood work showed a positive Rheumatoid Factor. Tr. 205-06. Further, despite no showing of a reoccurrence of throat cancer, she reported throat pain. Tr. 221-23. Subsequently, Dr. Moore conducted an exam and diagnosed Zeagler with Contact Laryngitis. Tr. 215.

On September 1, 2005, Zeagler saw Dr. Buckenberger for right foot and ankle pain. Tr. 214. She was diagnosed with Plantar fasciitis/Achilles tendinitis and pain medication was prescribed as well as the use of an "equalizer boot." Id. A referral to a pain management specialist was also made. Tr. 210-13. The specialist, Dr. Kang, diagnosed Zeagler with right ankle and foot pain with reflex sympathetic dystrophy and painful walking. Tr. 252. He also noted that she had difficulties with right knee and back pain. Tr. 251. She was prescribed medications to alleviate the pain. Tr. 252. Zeagler continued doctor visits for her pain through early September 2006, and Dr. Kang noted that her pain was aggravated by walking, as well as by bending and extending her right leg. Tr. 242- 251.

### b. Mental Impairment

During Zeagler's February 2004 visit to the University Medical Center after complaints of hoarseness, neck pain, symptoms of depression, and weight loss, the attending physician diagnosed her with depression and referred her to a therapist/social worker. Tr. 237. The attending physician also referred her to an Ear, Nose, and Throat Specialist that noted that Zeagler reported losing fourteen pounds in the prior two months due to "nervousness." Tr. 236.

In March 2005, Ken Hallstone, a Licensed Marriage and Family Therapist, wrote a letter reporting that he had been seeing Zeagler bi-monthly for individual psychotherapy since April 2003. Tr. 209. In his letter he wrote that she had anxiety that had progressed to social phobia. Tr. 209. Further, he noted that she had problems with organization, maintaining attention to details, and following through with instructions. Tr. 209. Also, he

stated that she had difficulties performing simple cleaning chores and that her symptoms were common of Attention Deficit Hyperactivity Disorder. Tr. 209. Aside from the letter he wrote in March 2005, Mr. Hallstone did not submit any treatment records.

### 2. Consulting Physicians

#### a. Physical Impairments

After Zeagler's application for benefits, the Social Security Administration sent her to Dr. Hasan for a consultative medical exam in November 2004. Tr. 161-65. She reported a past history of heart problems, history of cancer, carpal tunnel syndrome, and psychiatric illness. Tr. 161. Dr. Hasan concluded that there were no objective findings to place restrictions on Zeagler's physical activities, as she was in no acute distress, had normal strength, good muscle tone "with good active motion," normal sensory findings, normal reflexes and, a normal gait. Tr. 162-65.

In June 2005, state agency physician, Dr. Reddy reviewed the evidence and concluded that Zeagler's physical impairments were non-severe. Tr. 187. Dr. Hasan's and Dr. Reddy's examinations of Zeagler occurred before her ankle and foot problems were diagnosed by Dr. Buckenberger and Dr. Kang.

#### b. Mental Impairments

In connection with Zeagler's application for benefits, she was examined by Dr. Engeln. Tr. 151. Dr. Engeln conducted psychological testings that resulted with valid IQ scores ranging from Performance IQ of 84 to Verbal IQ of 93. Tr. 153-54. She tested at the 7th and 8th grade levels in reading, spelling, and arithmetic. Id. Dr. Engeln did not find evidence of delusions, hallucinations or confusion; however he did diagnose Zeagler with adjustment response to medical issues related to throat cancer and polysubstance abuse in reported remission. Id. He summarized that she "is able to perform one-to-two step simple job instructions, but not able to receive complex or technical job instructions." Tr. 155.

In January 2005, Dr. Middleton, a non-examining psychologist, reviewed the record and completed a Psychiatric Review Technique Form ("PRTF"), and a Mental Residual Functional Capacity Assessment. Tr. 166-83. Dr. Middleton found that Zeagler had a mild

4

restriction in activities of daily living and between mild and moderate difficulties maintaining social functioning and maintaining concentration, persistence or pace. Tr. 180. As for Zeagler's functional capacity, Dr. Middeton indicated that she was moderately limited in four of twenty categories of mental functioning and not significantly limited in the remaining sixteen categories. Tr. 166-68. She was moderately limited in her ability to understand, remember and carry out detailed instructions, work in coordination with or proximity to others without being distracted, and interacting appropriately with the general public. Id. Dr. Middleton concluded that Zeagler could learn, remember and carry out simple repetitive tasks, but would have difficulty with more complex instructions. Tr. 168. In May 2005, a non-examining consulting psychologist, Dr. Ikawa, confirmed Dr. Middleton's findings of Zeagler's psychological status. Tr. 187.

## II. STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id.; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040.

## III. DISCUSSION

### A.    The ALJ's Decision.

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 416.920. At the first step, the ALJ considers if the claimant is engaged in substantial gainful activity; if the claimant is not engaged in substantial gainful

5

activity, the second step asks if the claimant has a severe impairment (i.e. an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step calls for a determination of the claimant's "residual functional capacity" ("RFC") and asks if the claimant is capable of performing his past relevant work; if the claimant is not capable of performing his past relevant work, the fifth step asks if, given the claimant's RFC, he is capable of performing other work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

First, the ALJ found that Zeagler had not been engaged in substantial gainful activity since June 23, 2003. Tr. 14. Second, the ALJ concluded that Zeagler suffers from adjustment response to history of throat cancer and polysubstance abuse in reported remission. Id. Third, the ALJ found that Zeagler did not suffer from any condition that meets or equals the conditions outlined in the Listings. Id. Fourth, the ALJ described Zeagler's RFC as follows:

> the claimant has the residual functional capacity to lift and carry 100 pounds frequently and 50 pounds occasionally; to stand and/or walk six hours in a workday; to sit unrestricted; and is capable of job adjustment in a context where instructions are unidimensional and normal supervision is provided; *i.e.* she is limited to simple repetitive, one to two-step simple job instructions, and not able to receive complex or technical job instructions.

Id.

Based on this RFC, the ALJ found Zeagler capable of performing past relevant work as a house cleaner. Tr. 15. Despite finding that she was capable of performing her past relevant work, the ALJ continued the analysis to step five to determine whether Zeagler was capable of performing other work which exists in substantial numbers in the national economy, despite her limitations. Tr. 16-17. As is customary, the ALJ relied on the testimony of a vocational expert to determine step five. See § 20 C.R.F. 404.1566(e). At the hearing the vocational expert was instructed to assume the existence of a hypothetical individual with Zeagler's vocational profile and the exertional and nonexertional limitations

assigned to her by the ALJ. Tr. 16. The vocation expert testified that such an individual could perform the past relevant work of a housekeeper. Id. Additionally, the vocational expert testified that taking into consideration the same conditions and limitations, a person with the aforementioned RFC would be capable of performing the job of fruit harvest worker, tree trimmer, and commercial or institutional cleaner (e.g., janitor). Tr. 16-17. Consequently, the ALJ deemed Zeagler "not disabled" as defined by the Social Security Act. Tr. 17.

### B. The ALJ Failed to Document the Application of the "Special Technique."

Zeagler asserts that the ALJ failed to document his application of the "special technique" for evaluating severity of mental impairments. In the evaluation of a claim of disability based on mental impairment, the Commissioner is required to use a standard technique at the administrative hearing in order to aid him in: (1) identifying the need for additional evidence, (2) considering and evaluating the functional consequences of the mental disorder on the claimant's ability to work, and (3) organizing and presenting the facts. See 20 C.F.R. § 404.1520a(a). To ensure compliance with the procedural requirement of utilizing the "special technique," the ALJ's decision must:

> [i]ncorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2).

Here, the Commissioner concedes that the ALJ did not comply with this requirement because he failed to incorporate these required findings in his written decision. Def. Br. 6-7. The Commissioner nonetheless argues that the ALJ's failure to adhere to the requirement was a "harmless error" because it did not affect the outcome of the case. However, the "special technique" requirement is not a mere technicality; rather it serves to aid the SSA in "[o]rganizing and presenting [its] findings in a clear, concise, and consistent manner." 20 C.F.R. § 404.1520a(a)(3). The Commissioner has not demonstrated that the result would not have been different if the Commissioner had engaged in the proper analysis.

7

### C. The ALJ Failed to Properly Consider Evidence of Zeagler's Physical Impairments.

Zeagler asserts that the ALJ failed to properly consider evidence of her physical impairments in assessing her RFC. At step two it is important for the ALJ to consider the combined effects of all of the claimant's impairments on his or her ability to function, without regard to whether each alone is sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 20 C.F.R. §§ 404.1523, 416.923. In the ALJ's written report, the only mention of Zeagler's alleged physical impairment is:

> just before the hearing, claimant's representative produced some records regarding foot and ankle pain (e.g., Exhibit 11F, p.1 and Exhibit 13F, p. 11). However, there is nothing to indicate any residual function capacity or limitation for greater than 12 continuous months, and therefore these impairments are also nonsevere (20 C.F.R. § 416.965).

Tr. 16.

The Commissioner asserts that both Dr. Hasan and Dr. Reddy conducted a thorough exam and concluded that Zeagler had no physical restrictions. The Commissioner also argues that even if Zeagler had these impairments for over a year, she points to no medical evidence showing that she had significant restrictions.

If a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The record indicates that Dr. Hasan and Dr. Reddy evaluated Zeagler respectively in November 2004 and June 2005, prior to her September 2005 visit to Dr. Buckenberger for foot and ankle pain. During the September 2005 doctor visit, Zeagler was diagnosed with Plantar fasciitis/Achilles tendinitis. Further, after being referred to Dr. Kang, she was diagnosed with right ankle and foot pain with reflex sympathetic dystrophy and painful walking. Because Dr. Hasan's and Dr. Reddy's evaluations of Zeagler were conducted prior to the onset of the alleged foot and ankle pain, Dr. Buckenberger's and Dr. Kang's diagnoses are uncontroverted and their "ultimate conclusions . . . must be given substantial weight and cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ also erred by finding that Zeagler's foot and ankle impairments did not last for at least a year. The ALJ must determine whether a claimant's alleged impairments "has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The records indicate that Zeagler saw Dr. Buckenberger on September 1, 2005 and continued with her treatment through Dr. Kang until the most recent available record in September 2006. Tr. 242-51. Additionally, Dr. Kang's records indicate that Zeagler's foot and ankle pain began in July 2005. Tr. 252. Thus, the ALJ erred in finding that Zeagler's foot and ankle impairment did not meet the one year requirement because at the time of the hearing in October 2006, Zeagler's treatment for her foot and ankle impairments had been documented for over one year.

Moreover, if the ALJ needed more information to fully assess the condition, he had a duty to conduct appropriate inquiry and to fully develop the record. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Smolen, 80 F.3d at 1288. Without doing so, the ALJ failed to provide "clear and convincing" reasons for disregarding the diagnoses of both Dr. Buckenberger and Dr. Kang. Therefore, the ALJ failed to properly consider evidence of Zeagler's physical impairments in assessing her RFC.

### D. The Vocational Expert's Testimony is Unsupported in Light of the Court's Findings.

Zeagler contends that because the ALJ did not properly assess her RFC, the vocational expert's responses to the hypotheticals cannot constitute substantial evidence. The ALJ may meet his burden under step five by propounding to a vocational expert a hypothetical that is based upon medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995); Magallanes, 881 F.2d at 756. The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

Although an ALJ need not include all claimed impairments in his hypotheticals . . . he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical. Light v. Social Sec. Admin., 119

9

F.3d 789, 793 (9th Cir. 1997) (the hypothetical was inadequate because the ALJ failed to make "specific findings justifying" his decision to discredit plaintiff's complaints). Consequently, "if the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). "If a vocational experts hypothetical do not reflect the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. See Matthews v. Shalala 10 F.3d 678, 681 (9th Cir. 1993). As previously discussed, the ALJ did not give adequate reasons for rejecting Zeagler's foot and ankle impairment, and her RFC may have been different if he had documented his application of the "special technique." Therefore this Court cannot find that the opinions of the vocational expert included Zeagler's "actual" RFC.

### E. The ALJ Failed to Support His Conclusions.

Zeagler argues that the ALJ failed to properly assess her mental limitations. A claimant's RFC assessment is a determination of what the claimant can do despite his or her physical, mental, and other limitations. See 20 C.R.F. §§ 404.1545(a), 416.495(a). In determining a claimant's RFC, an ALJ must assess all the evidence (including the claimant's and others' descriptions of limitations and medical reports) to determine what capacity the claimant has for work despite his or her impairment(s). See id.

Here, the ALJ's analysis of Zeagler's mental impairments states:

> regarding the psychiatric, I do note a letter from claimant's marriage and family counselor stating claimant had difficulty housekeeping, has social phobias, generalized anxiety and suspected she would be diagnosed as attention deficit hyperactivity disorder. However, little weight is given to those comments as such "diagnoses" are not supported elsewhere in the medical evidence of records. The State agency reviewer does impose four moderate limitations (Exhibit 6F, pp. 1-2 – bases for hypothetical #2), but that is not fully consistent with that same reviewer's evaluation in the Psychiatric Review Technique Form (Exhibit 7F, p. 11 – bases for hypothetical #3). Greater weight is given to the Psychiatric Consultative Examiner, as an examining source (Exhibit 4F, p. 5 – bases for hypothetical #1 to the vocational expert).

Tr. 15.

1    The duty to determine a claimant's RFC is left to the Commissioner. 20 C.F.R. §
2 416.927(e)(2); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[i]t is clear
3 that it is the responsibility of the ALJ, not the claimant's physician, to determine residual
4 functional capacity"). However, despite the ALJ's discretion, he still has a duty to set forth a
5 detailed analysis of how he reached his conclusions. Social Security Ruling 98-6p
6 (describing extensive narrative discussion requirements of the ALJ). Zeagler argues that the
7 ALJ did not evaluate and analyze any of the evidence as it relates to her limitations in social
8 functioning, nor explain why he disregarded Dr. Middleton's opinion and instead gave
9 greater weight to the PRTF. Pl. Br. 14-15. Further, she argues that the ALJ failed to explain
10 the differences between Dr. Engeln and Dr. Middleton's opinions; namely why Dr.
11 Middleton added limitations that Dr. Engeln did not. Id. at 15.

12   Although the Commissioner gives a detailed explanation in his brief as to how the
13 ALJ reached his conclusion that Zeagler was "not disabled" within the meaning of the Social
14 Security Act, a district court cannot affirm an ALJ's decision based on evidence that the ALJ
15 did not discuss in his written report. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.
16 2003) (it was error for the district court to affirm the ALJ's credibility decision based on
17 evidence that the ALJ did not discuss). The Court reviews only the reasons provided by the
18 ALJ in the disability determination and may not affirm the ALJ on a ground upon which he
19 did not rely. Social Security Act, §§ 205(g), 1631(c)(3), 42 U.S.C.A. §§ 405(g), 1383(c)(3).
20 "Requiring the ALJ to make specific findings on the record at each phase of the step four
21 analysis provides for meaningful judicial review. Winfrey v. Chater, 92 F.3d 1017, 1025
22 (10th Cir.1996). his Court cannot affirm conclusory determinations from an ALJ "unless it is
23 supported by specific findings and reasoning." Robbins v. Social Security Admin., 466 F.3d
24 880, 885 (9th Cir. 2006).

25   **E.   Remand is Appropriate.**

26   Because the ALJ erred the Court must determine whether a remand for further
27 proceedings is appropriate or whether to award benefits. See Reddick v. Chater, 157 F.3d
28 715, 728 (9th Cir. 1998). An award of benefits is only appropriate if "the record is fully

11

developed and it is clear from the record that the ALJ would be required to award benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).

Zeagler cites Moisa v. Barnhart, for the proposition that the Commissioner having lost his appeal should not have another opportunity to re-review the evidence on remand. 367 F.3d 882, 887 (9th Cir. 2004). However, Zeagler fails to note that the Ninth Circuit considered Moisa a case of rare circumstance. Id. at 888. The general rule is that when a court reverses an administrative agency determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744(1985)). Because it is not clear from the record that the ALJ would be required to find Zeagler disabled, remand is appropriate.

## IV. CONCLUSION

For the reasons stated above, this case is REMANDED for further consideration.

**IT IS SO ORDERED.**

Dated: April 10, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2007\3809\remand.order.wpd.v4.wpd